# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| CUSTODIO GARCIA, ) | |
| ) | |
| Movant, ) | |
| ) | Civil No. 14-00190-CV-W-FJG |
| v. ) | Crim. No. 08-00311-CR-W-FJG |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| Respondent. ) | |

## ORDER

Currently pending before the Court is movant's Motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C § 2255. (Doc. # 1).

### I. BACKGROUND

On November 18, 2008, an indictment was returned charging Garcia with four counts: 1) conspiracy to distribute 500 grams or more of methamphetamine, five kilograms or more of cocaine, and 50 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; (2) being an illegal alien in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2); 3) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) and 2 and 4) illegal entry into the United States in violation of 8 U.S.C.§ 1325(a)(1). On August 19, 2009, Custodio Garcia pled guilty to the charges. On October 28, 2010, Garcia was sentenced to a total term of 180 months, 120 months on the drug counts and a mandatory consecutive sentence of 60 months on the firearm charge. Garcia

appealed, arguing that the Court had erred in not granting him the safety valve relief under 18 U.S.C. § 3553(f)(2). The Eighth Circuit affirmed. Garcia's §2255 motion seeks to vacate the 60 month sentence for the firearm charge. Garcia raises two grounds in support of his motion: 1) the consecutive sentence imposed for the § 924(c) violation punishes movant for how his co-defendant exercised his Second Amendment rights and 2) counsel was ineffective for failing to raise this issue.

## II. STANDARD

28 U.S.C. § 2255 provides, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The district court must hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. "Accordingly, a claim may be dismissed without an evidentiary hearing if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." Shaw v. United States, 24 F.3d 1040, 1043 (8th Cir. 1994) (citing Larson v. United States, 905 F.2d 218, 220-21 (8th Cir. 1990), cert. denied, 507 U.S. 919, 113 S.Ct. 1278, 122 L.Ed.2d 672 (1993)).

## III. DISCUSSION

**A.    Imposition of Consecutive Sentence for Violation of 18 U.S.C. § 924 (c)**

Garcia states in his first ground for relief that his sentence includes a five year

consecutive sentence for aiding and abetting possession of a firearm during a drug trafficking offense in violation of 18 U.S.C. §924(c).  He states that Detective Mark Corbin testified at the sentencing hearing that the firearm at issue was possessed by a co-defendant, Jose Luis Flores-Pagaza, whom Detective Corbin made undercover firearms purchases from.  Garcia states that Detective Corbin also testified that he bought the firearm after he had completed the drug purchase and that the two transactions were independent of each other.  Garcia argues that independence between the transactions means that his punishment has been increased on the basis of how Jose Luis Flores-Pagaza exercised his individual Second Amendment rights.  Garcia cites to District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) in support of his position.

The Government responds first that Garcia's claim was forfeited by his failure to raise the issue on direct appeal.  In Grooms v. United States, 556 Fed. Appx. 548, 551 (8th Cir. 2014), the Court stated, "[a] prisoner who fails to raise a claim on direct appeal generally may not raise it in a §2255 motion."  However, the Government argues that even if the Court considers Garcia's claim on the merits, it should be denied.  In his initial motion, Garcia argues that the drug sale and the gun sale were two separate transactions and were independent of each other.  He states that the independence of these transactions means that Garcia's punishment was increased "on the basis of how Jose Luis Flores-Pagaza exercised individual Second Amendment rights as they have been defined by the Supreme Court.  See District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008)." (Garcia's § 2255 Motion, p. 4A).  The Government argues that in Heller, the Supreme Court did not invalidate all laws

3

restricting the possession or use of guns and the Court specifically stated, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id. 554 U.S. at 626-27. Similarly, in United States v. Bryant, 711 F.3d 364, 368-70 (2d Cir.) cert. denied, 134 S.Ct. 804 (2013), the Court stated that "given the Supreme Court's guidance, our own jurisprudence, and the pervasive authority from our sister circuits that have addressed this issue directly, we hold that the Second Amendment does not protect the *unlawful* purpose of possessing a firearm in furtherance of a drug trafficking crime and that 18 U.S.C. §924(c) as applied in this case does not violate the Second Amendment." Id. at 370 (internal citations omitted). In McDonald v. City of Chicago, Illinois, 561 U.S. 742, 130 S.Ct. 3020, 3047,177 L.Ed.2d 894 (2010), the Supreme Court stated, "It is important to keep in mind that Heller, while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.' [Heller], 554 U.S. at 626, 128 S.Ct. at 2816." Thus, Garcia's punishment was not increased because his co-defendant exercised a legitimate Second Amendment right to possess a handgun. As noted above, simply because the Court in Heller struck down the District of Columbia's handgun ban does not mean that it is permissible to possess a handgun during the commission of a crime.

In his reply suggestions, Garcia states, "[w]hen [he] pleaded guilty to the § 924(c) offense he believed that all that was required to complete the offense was his

4

assistance to the drug trafficking offense (which Garcia has admitted) while his associate in the crime possessed a firearm.  Under this view Garcia would be guilty of the aiding and abetting offense on the simple basis of knowing that his co-defendant possessed a firearm, even if he did not know that his associate would use or carry the firearm during the drug trafficking offense.  Under these circumstances, Garcia would be guilty of the § 924(c) offense even if the associate's possession of the firearm was within the associate's Second Amendment rights." (Reply Suggestions, pp. 2-3).  In support of this argument, Garcia cites to Rosemond v. United States, 134 S.Ct. 1240, 188 L.Ed.2d 248 (2014). Garcia states that he admitted his participation in the drug trafficking offense, but the indictment did not allege that he had advance knowledge that his co-defendant would use or carry a firearm and he did not admit any advance knowledge when he pled guilty.

> The Supreme Court in Rosemond, 134 S.Ct.1240, 188 L.Ed.2d 248, stated:
>
> An active participant in a drug transaction has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun. . . . For all that to be true, though, the § 924 (c) defendant's knowledge of a firearm must be advance knowledge – or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice.  When an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an *armed* offense.

Id. at 1249.  In the instant case, there is ample evidence that Garcia had advance knowledge of the firearm. During his change of plea hearing, Garcia was asked:

Q.     And in conjunction with that conspiracy, you heard the government talk about you selling a silver Ruger to Officer Corbin; is that correct?

A.     Yes.  It wasn't mine but I did the transaction.

Q. Okay. You helped Jose Luis Flores-Pagaza sell that, correct?

A. Yes.

Q. And as to Count 3, when you did that transaction, you were an illegal alien, correct?

A. Yes.

Q. And you actually possessed the weapon during the transaction?

A. Yes, I held it.

. . .

Q. You understand that as to Count 4, that that weapon when you sold it to him was done in conjunction with a drug transaction, correct?

A. Yes.
. . .

Q. And you believe that - -and based on that and where we're at in this particular case, you are pleading guilty to Count 4 because you sold that weapon at the same time you sold narcotics, correct?

A. Yes.

(Change of Plea Transcript, pp. 17-18).

Similarly, during sentencing, Detective Mark Corbin testified:

Q. Count IV, which is aiding and abetting, possession of a firearm during a drug trafficking crime. Now that particular offense took place on February the 22nd of 2008. Could you briefly describe to the court your contacts with him on that particular day?

A. Yes, sir. On that particular day I contacted Mr. Garcia in the rear of the residence located at 3019 East 8th Street in Kansas City, Jackson County, Missouri. Upon contacting Mr. Garcia, I purchased, I believe, a couple pounds -- two pounds of marijuana for a previously agreed-upon price. While conducting this transaction -- it was conducted in basically the backyard of the residence near our vehicles -- Mr. Garcia motioned with a hand -- typical motion that I would consider a gun motion using his index finger and his thumb that he'd like to show me. At that point we walked closer to the vehicle he had arrived in, which was a single cab,

6

full-sized pickup vehicle. Upon getting to that vehicle or closer, I observed an individual that I knew as Flores-Pagaza sitting in the passenger seat area.

Q. And he was someone that you had dealt with before in this investigation?

A. Yes. I had purchased controlled substances from him as well.

Q. Now, this -- when Custodio Garcia made the motion with the gun that he wanted to show you, is this after your narcotics purchase had taken place?

A. Yes, sir.

Q. Okay. So you go over to the truck and you observe Flores-Pagaza in the passenger seat. Go ahead and explain what you see then.

A. Basically I see a large frame, larger caliber, revolver-type weapon in the front -- I'd say the bench seat. I can't tell you exactly how far in the seat it was, but it was in the bench seat of the single-cab pickup truck. I pick it up, I inspect it, say -- I indicate a willingness to purchase the weapon. At that point I negotiated a price. I believe we start out in just a typical negotiation fashion. Mr. Garcia provides a price, and typically based on experience, my training, it was always better if I didn't agree upon that price, to negotiate it down, to look like a typical criminal activity.

Q. So what was the price that he shot you to begin with?

A It was around $400.

Q And what did you do at that point in time?

A. Once again, we negotiated a lower price, I believe $350 that we agreed upon with Mr. Garcia and I. I removed $350 that -- I had prerecorded task force money, drug task force money, and I placed it on the front passenger seat of the vehicle. I then asked Mr. Garcia for a box to conceal the firearm. Once again, I was trying to portray the image that I too was a criminal, thus I couldn't just walk around the streets with a weapon exposed.

Q. Did Mr. Garcia provide you with a box or something to put the gun in?

A. Yes. He obtained a discarded, empty Bud Light beer box like a 12-pack or case of beer would fit in, and I placed the firearm into that, the discarded beer box.

Q. And that was pretty much your contact with him on the 22nd in regards to the firearm portion of the deal; is that correct?

7

A   Yes, sir.

(October 28, 2010 Sentencing Hearing Transcript, pp. 6-8).

In this case, it is clear from both the change of plea and sentencing transcripts, that Garcia had advance knowledge of the presence of the firearm. Although Garcia testified that the gun did not belong to him, Detective Corbin testified that it was Garcia who motioned to Corbin that he had a gun for him to look at, Garcia who showed him the gun in the truck and Garcia who negotiated with Corbin regarding a price for the gun. All of these actions show Garcia's advance knowledge of the existence of the gun and his possession of the firearm during the commission of the drug trafficking crime. Detective Corbin also testified that he arrived at the residence before Garcia and Flores-Pagaza. (Sentencing Transcript, p. 14, 28). Additionally, Corbin testified that the gun was laying on the front bench seat of the truck between Garcia, who was in the driver's seat and Flores-Pagaza, who was in the passenger seat. (Sentencing Transcript, pp. 28-29). Thus, based on Garcia's admissions during the Change of Plea hearing and the testimony of Detective Corbin during the sentencing hearing, the Court finds that Garcia had "advance knowledge" of the firearm when he sold the drugs to Detective Corbin.

Garcia argued in his initial motion and in his reply suggestions that he "[i]n effect, [had] been convicted and sentenced for another person's possession of a firearm, even though possessing a firearm is a Constitutionally protected right." (Reply Suggestions, p.1). However, as noted above, an individual does not have a constitutional right to possess a gun during the commission of a crime. Secondly, as the Court in Rosemond explained the law of aiding and abetting, "[w]e have previously held that under § 2 [18 U.S.C. § 2 – the federal aiding and abetting statute],'those who provide knowing aid to

persons committing federal crimes, with the intent to facilitate the crime, are themselves committing a crime.'" Id. at 1245 (quoting Central Bank of Denver, N.A. v. First Interstate Bank of Denver N.A., 511 U.S. 164,181,114 S.Ct.1439, 128 L.Ed.2d 119 (1994)).

> "An active participant in a drug transaction has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun. In such a case, the accomplice has decided to join in the criminal venture, and share in its benefits, with full awareness of its scope- that the plan calls not just for a drug sale, but for an armed one. . . .He thus becomes responsible, in the typical way of aiders and abettors, for the conduct of others. He may not have brought the gun to the drug deal himself, but because he took part in that deal knowing a confederate would do so, he intended the commission of a § 924(c) offense- i.e. an armed drug sale.

Id. at 1249. The Court in Rosemond stated "that § 924(c) forbids 'us[ing] or carr[ying] a firearm' when engaged in a 'crime of violence or drug trafficking crime,' . . .The prosecutor must show the use or carriage of a gun; so too he must prove the commission of a predicate (violent or drug trafficking) offense." Id. at 1245 (internal citations omitted). Thus, contrary to Garcia's argument, he was not sentenced for another's lawful possession of a gun. The possession of the gun was unlawful and as an aider and abettor, he had advance knowledge that a gun was used or carried during the commission of the drug trafficking crime. Accordingly, the Court hereby **DENIES** Garcia's Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255 (Doc. # 1).

### B. Ineffective Assistance of Counsel

Garcia argues in his second ground for relief that his counsel was ineffective for failing to raise an argument based on Heller and Rosemond as discussed above. To

9

prevail on a claim of ineffective assistance of counsel, a movant must show that the attorney's performance fell below an objective standard of reasonableness and that the performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The Court is to adopt an extremely deferential approach in evaluating counsel's performance. 466 U.S. at 689, 104 S.Ct. at 2065-66. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' See Michel v. Louisiana, 350 U.S. 91,101, 76 S.Ct.158,164, 100 L.Ed.2d 83 (1955)." Id. Additionally, to establish prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. at 2068.

The Court does not find that Garcia's counsel was ineffective, because as discussed above, Garcia's arguments that his sentence was enhanced based on his co-defendant's exercise of his Second Amendment rights were meritless. Thus, any argument raising these issues would have been futile. The Eighth Circuit has held that counsel cannot be found ineffective for failing to file a futile motion. Dowty v. U.S., No. 13-3022-RAL, 2014 WL 1668336, *5 (D.S.D. Apr. 25, 2014), Hale v. Lockhart, 903 F.2d 545,549 (8th Cir.1990).

No evidentiary hearing will be held in this matter because the issues raised are resolvable by the record. Furthermore, movant will be denied a motion for certificate of

appealability.  Under 28 U.S.C. § 2253(c)(2), "[a] certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right."  The Court finds that the issues raised by movant do not meet this criteria.

### IV. CONCLUSION

Accordingly, for the reasons stated above, the court hereby **DENIES** Garcia's Motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C § 2255. (Doc. # 1). The Court also denies Garcia a certificate of appealability.


Date: July 25, 2014  
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**  
Fernando J. Gaitan, Jr.  
United States District Judge